UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ATLANTIS REHABILITATION AND RESIDENTIAL HEALTH CARE FACILITY, LLC; BEACH TERRACE CARE CENTER, INC.; BELLHAVEN CENTER FOR GERIATRIC AND REHABILITATIVE CARE, INC.; BERKSHIRE NURSING HOME, LLC; BRIDGE VIEW NURSING HOME, INC.; CGSR, INC.; CLIFFSIDE NURSING HOME, INC.; CORTLANDT HEALTHCARE, LLC; FAIRVIEW NURSING CARE CENTER, INC.; FOREST VIEW NURSING HOME, INC.; FULTON COMMONS CARE CENTER, INC.; GERMAN MASONIC HOME CORPORATION; GNH LLC; GRANDELL REHABILITATION AND NURSING CENTER, INC.; HAMILTON PARK MULTICARE, LLC; HUDSON VIEW CARE CENTER, INC.; HYDE PARK NURSING HOME, INC.; IROP LLC; KENNETH GAUL II, LLC; LAWRENCE NURSING CARE CENTER, INC.; MAYFAIR CARE CENTER, INC.; MEADOWBROOK CARE CENTER, INC.; MICHAEL MELNICKE; MIDWAY NURSING HOME, INC.; NEW CARLTON REHAB AND NURSING CENTER, LLC; NEW EAST SIDE NURSING HOME, LLC; NEW GLEN OAKS NURSING HOME, INC.; NORTHERN MANHATTAN NURSING HOME, INC.; OCEANSIDE CARE CENTER, INC.; OPOP LLC; PARK GARDENS REHABILITATION AND NURSING CENTER, LLC; PARK HOUSE CARE CENTER, LLC; PARK TERRACE CARE CENTER, INC.; PELHAM PARKWAY NURSING CARE AND REHABILITATION FACILITY, LLC; PONTIAC NURSING HOME, LLC; PROMENADE NURSING HOME, INC.; QUEENS NASSAU NURSING HOME, INC.; RIVER VALLEY CARE CENTER, INC.; ROCKAWAY CARE CENTER LLC; SILVER LAKE SPECIALIZED REHABILITATION AND CARE CENTER, LLC; SMITHTOWN HEALTH CARE MANAGEMENT LLC; SOUTH SHORE NURSING HOME, INC.; | : | 10 CV 3979 (JGK)<br><br>AMENDED COMPLAINT FOR INJUNCTION AND <u>DECLARATORY RELIEF</u> |

RECEIVED
AUG 18 2010
U.S.D.C. S.D. N.Y.
CASHIERS

SUNSHINE CARE CORP.; THE NURSING CARE CENTER AT MEDFORD, INC.; UNION PLAZA NURSING HOME, INC.; VJJ HOLDING COMPANY, LLC; WLOP LLC; WMOP LLC; WOODCREST REHABILITATION & RESIDENTIAL HEALTH CARE CENTER, LLC, and MANHATTANVILLE SBV LLC

Plaintiffs,

-against-

DAVID A. PATERSON, as Governor of the State of New York; RICHARD F. DAINES, M.D., as Commissioner of the New York State Department of Health; and ROBERT L. MEGNA, as Budget Director of the New York State Division of Budget,

Defendants.

x

Plaintiffs Atlantis Rehabilitation and Residential Health Care Facility, LLC; Beach Terrace Care Center, Inc.; Bellhaven Center for Geriatric and Rehabilitative Care, Inc.; Berkshire Nursing Home, LLC; Bridge View Nursing Home, Inc.; CGSR, Inc.; Cliffside Nursing Home, Inc.; Cortlandt Healthcare, LLC; Fairview Nursing Care Center, Inc.; Forest View Nursing Home, Inc.; Fulton Commons Care Center, Inc.; German Masonic Home Corporation; GNH LLC; Grandell Rehabilitation and Nursing Center, Inc.; Hamilton Park Multicare, LLC; Hudson View Care Center, Inc.; Hyde Park Nursing Home, Inc.; IROP LLC; Kenneth Gaul II, LLC; Lawrence Nursing Care Center, Inc.; Mayfair Care Center, Inc.; Meadowbrook Care Center, Inc.; Michael Melnicke; Midway Nursing Home, Inc.; New Carlton Rehab and Nursing Center, LLC; New East Side Nursing Home, LLC; New Glen Oaks Nursing Home, Inc.; Northern Manhattan Nursing Home, Inc.; Oceanside Care Center, Inc.; OPOP LLC; Park Gardens

Rehabilitation and Nursing Center, LLC; Park House Care Center, LLC; Park Terrace Care Center, Inc.; Pelham Parkway Nursing Care and Rehabilitation Facility, LLC; Pontiac Nursing Home, LLC; Promenade Nursing Home, Inc.; Queens Nassau Nursing Home, Inc.; River Valley Care Center, Inc.; Rockaway Care Center LLC; Silver Lake Specialized Rehabilitation and Care Center, LLC; Smithtown Health Care Management LLC; South Shore Nursing Home, Inc.; Sunshine Care Corp.; The Nursing Care Center at Medford, Inc.; Union Plaza Nursing Home, Inc.; VJJ Holding Company, LLC; WLOP LLC; WMOP LLC, Woodcrest Rehabilitation and Residential Health Care Center, LLC, and Manhattanville SBV LLC (together referred to as "Plaintiffs" or the "Facilities"), by their attorneys, Duane Morris LLP, for their complaint against Defendants David A. Paterson, in his capacity as Governor of the State of New York; Richard F. Daines, M.D., in his capacity as the Commissioner, New York State Department of Health ("DOH"); and Robert L. Megna, in his capacity as Budget Director of the New York State Division of Budget (Division of Budget") (together referred to as "Defendants"), allege as follows.

## NATURE OF THE CASE

1. This is an action for injunctive and declaratory relief. Plaintiffs are residential health care facilities which participate in the New York State Medical Assistance ("Medicaid") program. They seek to enjoin the implementation of certain laws and regulations which will drastically reduce, both retroactively and prospectively, the reimbursement Plaintiffs receive for caring for sick and elderly individuals eligible for assistance under the Medicaid program.

2. In adopting the laws and regulations that Plaintiffs seek in this action to enjoin and declare invalid and unenforceable – Part D, Chapter 58 of the Laws of 2009 (the "Laws of 2009") – Defendants did not take into account the level of payments that Plaintiffs and other nursing homes need if they are to provide efficient, economical, and quality nursing facility care,

nor did Defendants consider whether the laws would ensure that Medicaid beneficiaries had access to nursing facility services to the same extent as the general population. Defendants adopted these laws for one reason alone: to meet a budgetary objective.

3. By choosing to participate in Medicaid, New York State obligated itself to comply with the applicable Federal statutes and regulations. Among other things, these Federal statutes and regulations require that the State follow methods and procedures which assure that payments for care rendered to Medicaid recipients are "consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30)(A). They also require that the State's methods and procedures assure payments that are "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." Id.

4. In addition, the Federal statutes and regulations with which New York State is obligated to comply require public notice of changes in New York's Medicaid reimbursement methodology. 42 U.S.C. §1396a(a)(13)(A). No such notice was provided of the changes New York State is planning to implement in its Medicaid reimbursement methodology.

5. Nothing in the Federal laws which govern Medicaid gives states the right to eliminate their budgetary issues by disregarding their obligation to ensure that Medicaid reimbursement rates are sufficient to satisfy the quality of care and access requirements.

6. Absent injunctive and declaratory relief, Plaintiffs will suffer extreme economic hardship which will inhibit their ability to render quality care to their residents, and create a disincentive for admission of Medicaid patients in the future, increasing the likelihood that Medicaid beneficiaries will face difficulty in finding admission to quality residential health care facilities.

7. The injunctive and declaratory relief Plaintiffs seek is necessary to keep New York State from violating Federal law and New York State law and causing irreparable harm to Plaintiffs and the Medicaid beneficiaries they care for by depriving Plaintiffs of the reimbursement they need to provide adequate services.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims asserted herein arise under the United States Constitution and the laws of the United States. In addition, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Since the only relief sought in this action is either prospective or declaratory, this action may be maintained consistent with the Eleventh Amendment to the United States Constitution.

10. Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1391 because at least two of the persons sued in their official capacity maintain offices within this district, the State defendants have offices within this district, and a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## PARTIES

11. Atlantis Rehabilitation and Residential Health Care Facility, LLC is a residential health care facility located at 140 St. Edward Street in Brooklyn, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

12. Beach Terrace Care Center, Inc. is a residential health care facility located at 640 West Broadway in Long Beach, New York that is, and at all times relevant hereto, was licensed

by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

13. Bellhaven Center for Geriatric and Rehabilitative Care, Inc. is a residential health care facility located at 110 Beaver Dam Road in Brookhaven, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

14. Berkshire Nursing Home, LLC is a residential health care facility located at 10 Berkshire Road in West Babylon, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

15. Bridge View Nursing Home, Inc. is a residential health care facility located at 143-10 20th Avenue in Whitestone, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

16. CGSR, Inc. d/b/a Meadowbrook Healthcare is a residential health care facility located at 154 Prospect Avenue in Plattsburgh, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

17. Cliffside Nursing Home, Inc. is a residential health care facility located at 119-19 Graham Court in Flushing, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

18. Cortlandt Healthcare, LLC is a residential health care facility located at 110 Oregon Road in Peekskill, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

19. Fairview Nursing Care Center, Inc. is a residential health care facility located at 69-70 Grand Central Parkway in Forest Hills, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

20. Forest View Nursing Home, Inc. is a residential health care facility located at 71-20 110th Street in Forest Hills, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

21. Fulton Commons Care Center, Inc. is a residential health care facility located at 60 Merrick Avenue in East Meadows, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

22. German Masonic Home Corporation d/b/a Dumont Masonic Home is a residential health care facility located at 676 Pelham Road in New Rochelle, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

23. GNH LLC d/b/a Gowanda Rehabilitation and Nursing Center is a residential health care facility located at 100 Miller Street in Gowanda, New York that is, and at all times

relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

24. Grandell Rehabilitation and Nursing Center, Inc. is a residential health care facility located at 645 West Broadway in Long Beach, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

25. Hamilton Park Multicare, LLC is a residential health care facility located at 691 92nd Street in Brooklyn, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

26. Hudson View Care Center, Inc. d/b/a Regency Extended Care Center is a residential health care facility located at 65 Ashburton Avenue in Yonkers, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

27. Hyde Park Nursing Home, Inc. d/b/a Renaissance Rehabilitation and Nursing Care Center is a residential health care facility located at 4975 Albany Post Road in Staatsburg, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

28. IROP LLC d/b/a Indian River Rehabilitation and Nursing Center is a residential health care facility located at 17 Madison Street in Granville, New York that is, and at all times

relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

29. Kenneth Gaul II, LLC d/b/a Cedar Lodge Nursing Home is a residential health care facility located at 6 Frowein Road in Center Moriches, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

30. Lawrence Nursing Care Center, Inc. is a residential health care facility located at 350 Beach 54th Street in Arverne, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

31. Mayfair Care Center, Inc. is a residential health care facility located at 100 Baldwin Road in Hempstead, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

32. Meadowbrook Care Center, Inc. is a residential health care facility located at 320 West Merrick Road in Freeport, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

33. Michael Melnicke d/b/a Caton Park Nursing Home is a residential health care facility located at 1312 Caton Avenue in Brooklyn, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

34. Midway Nursing Home, Inc. is a residential health care facility located at 69-95 Queens Midtown Expressway in Maspeth, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

35. New Carlton Rehab and Nursing Center, LLC is a residential health care facility located at 405 Carlton Avenue in Brooklyn, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

36. New East Side Nursing Home, LLC is a residential health care facility located at 25 Bialystoker Place in New York, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

37. New Glen Oaks Nursing Home, Inc. is a residential health care facility located at 260-01 79th Avenue in Glen Oaks, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

38. Northern Manhattan Nursing Home, Inc. is a residential health care facility located at 116 East 125th Street in New York, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

39. Oceanside Care Center, Inc. is a residential health care facility located at 2914 Lincoln Avenue in Oceanside, New York that is, and at all times relevant hereto, was licensed

by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

40. OPOP LLC d/b/a Ocean Promenade Nursing Center is a residential health care facility located at 140 Beach 113th Street in Rockaway Park, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

41. Park Gardens Rehabilitation and Nursing Center, LLC ("Park Gardens") is a residential health care facility located at 6585 Broadway in Riverdale, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

42. Park House Care Center, LLC is a residential health care facility located at 128 Beach 115th Street in Rockaway Park, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

43. Park Terrace Care Center, Inc. is a residential health care facility located at 59-20 Van Doren Street in Rego Park, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

44. Pelham Parkway Nursing Care and Rehabilitation Facility, LLC is a residential health care facility located at 2401 Laconia Avenue in Bronx, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

45. Pontiac Nursing Home, LLC is a residential health care facility located at 303 East River Road in Oswego, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

46. Promenade Nursing Home, Inc. ("Promenade") is a residential health care facility located at 140 Beach 114th Street in Rockaway Park, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

47. Queens Nassau Nursing Home, Inc. is a residential health care facility located at 520 Beach 19th Street in Far Rockaway, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

48. River Valley Care Center, Inc. is a residential health care facility located at 140 Main Street in Poughkeepsie, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

49. Rockaway Care Center LLC is a residential health care facility located at 353 Beach 48th Street in Edgemere, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

50. Silver Lake Specialized Rehabilitation and Care Center, LLC ("Silver Lake") is a residential health care facility located at 275 Castleton Avenue in Staten Island, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health

under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

51. Smithtown Health Care Management LLC is a residential health care facility located at 391 North Country Road in Smithtown, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

52. South Shore Nursing Home, Inc. is a residential health care facility located at 275 West Merrick Road in Freeport, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

53. Sunshine Care Corp. d/b/a Hempstead Park Nursing Home is a residential health care facility located at 800 Front Street in Hempstead, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

54. The Nursing Care Center at Medford, Inc. d/b/a Medford Multicare Center for Living is a residential health care facility located at 3115 Horseblock Road in Medford, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

55. Union Plaza Nursing Home, Inc. is a residential health care facility located at 33-23 Union Street in Flushing, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

56. VJJ Holding Company, LLC d/b/a Woodhaven Nursing Home ("Woodhaven") is a residential health care facility located at 1360 Route 112 in Port Jefferson Station, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

57. WLOP LLC d/b/a West Ledge Rehabilitation and Nursing Center is a residential health care facility located at 2000 E. Main Street in Peekskill, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

58. WMOP LLC d/b/a Achieve Rehab and Nursing Facility is a residential health care facility located at 170 Lake Street in Liberty, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

59. Woodcrest Rehabilitation & Residential Health Care Center, LLC is a residential health care facility located at 119-09 26th Avenue in College Point, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

60. Manhattanville SBV LLC is a residential health care facility located at 311 West 231st Street, Bronx, New York that is, and at all times relevant hereto, was licensed by the New York State Department of Health under Article 28 of the New York Public Health Law and participated in New York State's Medicaid program.

61. David Paterson is the Governor of the State of New York, with offices located in Albany and New York Counties. As Governor, he is the State's highest elected official and is

responsible for ensuring that the laws of the State of New York are in compliance with applicable Federal laws and are faithfully executed.

62. Richard F. Daines, M.D. is the Commissioner of Health of the State of New York, with offices located in Albany and New York Counties. As Commissioner of Health, he is responsible for carrying out the duties assigned by law to him and to DOH, including administration of the Medicaid program.

63. Robert L. Megna is the Director of the Budget of the State of New York, with offices located in Albany County. As Director of the Budget, he is responsible for carrying out the duties assigned by law to him and to the New York State Division of Budget, including approval of Medicaid reimbursement rates established and determined by the Commissioner of Health pursuant to New York Public Health Law § 2807(3).

## BACKGROUND

### A. The Medicaid Program

64. The Medicaid program is a joint Federal-state program created under Title XIX of the Federal Social Security Act, codified at 42 U.S.C. § 1396 *et seq*. (the "Social Security Act").

65. Participation by states in the Medicaid program is voluntary. If, however, a state chooses to participate in Medicaid, it is required to comply with certain Federal statutes and regulations.

66. Under the Medicaid program, states that elect to participate in Medicaid are reimbursed in part by the Federal Government for the costs they incur in providing health care services and treatment, including nursing facility services, to low-income and disabled residents who qualify for Medicaid assistance. *See* 42 U.S.C. § 1396.

67. In order for a state to be eligible for Federal financial participation and assistance under the Medicaid program, the state must adopt a State Plan for Medical Assistance that is

approved by the U.S. Secretary of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS").

68. Federal and state government agencies share responsibility for funding the Medicaid program. At present, in excess of 50 percent of the costs incurred by the State of New York in funding nursing facility services under the Medicaid program is reimbursed by the Federal government pursuant to a formula set forth at 42 U.S.C. § 1396b.

69. In order to participate in the Medicaid program, a state must designate as part of its State Plan a "single state agency" within the state to administer the state's Medicaid program. *See* 42 U.S.C. § 1396a(a)(5).

70. New York State has elected to participate in the Medicaid program. In doing so, New York State obligated itself to comply with all applicable Federal statutes and regulations.

71. At all times relevant hereto, New York State has had in effect a state plan for medical assistance (the "State Plan") approved by CMS or its predecessor.

72. At all times relevant hereto, New York State has designated DOH as the "single state agency" to administer and supervise the State Plan. *See* N.Y. Soc. Serv. Law § 363-a.

73. As the "single state agency" administering and supervising the State Plan, DOH must maintain the State Plan in conformity with Federal law, and in particular Title XIX of the Social Security Act. *See* N.Y. Soc. Serv. Law § 363-a(1) and 42 U.S.C. § 1396.

74. In order to comply with Federal law, New York, as a participant in the Medicaid program, must also comply with what is known as the "quality of care" clause of Section 30(A) of the Social Security Act, 42 U.S.C. § 1396a(a)(30)(A) ("Section 30(A)"), which provides in pertinent part:

> (A) A state plan for medical assistance must . . . provide such methods and procedures relating to the utilization of, and payment

> for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care . . . .

75. A state Medicaid program must also comply with what is known as the "access" clause of Section 30(A), which provides in pertinent part:

> (A) A state plan for medical assistance must . . . provide such methods and procedures relating to the utilization of, and payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments . . . are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

76. Federal regulations promulgated under Section 30(A) require DOH to make payments to providers of Medicaid services that are "sufficient to enlist enough providers so that services under the plan are available to recipients at least to the extent that those services are available to the general population." 42 C.F.R. § 447.204.

77. In order to demonstrate that a state's reimbursement payments comply with Federal statutes, Federal regulations, and the State Plan, and that its reimbursement payments are not arbitrary and capricious, a state must use "methods and procedures" to ensure adequacy of the reimbursement rates prior to implementing new reimbursement rates and methodologies. The rates themselves must also be consistent with "efficiency, economy and quality of care" and sufficient to ensure that enough providers are enlisted so that services under the plan are available to recipients at least to the extent that they are available to the general public.

78. Under Section 1902(a)(13)(A) of the Social Security Act, 42 U.S.C. §1396a(a)(13)(A) ("Section 13(A)"), a state plan also must provide a public process for the determination of rates of payment to providers of nursing facility services, whereby "(i) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published; (ii) providers, beneficiaries and their representatives and other

concerned state residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies and justifications; and (iii) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates, are published."

79. Federal regulations require that a state Medicaid agency seeking to amend its state plan must do so in accordance with 42 C.F.R. § 430.12(c) and, in accordance with 42 C.F. R. § 447.205, a state must provide public notice of any significant proposed changes in its methods and standards for setting payment rates.

80. Federal regulations at 42 C.F.R. § 447.253 require that, in order to obtain approval of a state plan change in payment methods and standards, a state must present findings to CMS establishing that, *inter alia*, (a) the revised payment rates "are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards," 42 C.F.R. § 447.253(b)(1)(i); and (b) "procedures under which the data and methodology used in establishing payment rates are made available to the public," 42 C.F.R. § 447.253(b)(1)(iii)(C).

81. In addition, when a state is proposing significant changes to its methods or standards for setting payment rates for nursing facility services, it must provide assurances that it has complied with the public notice requirements in 42 C.F.R. § 447.205. 42 C.F.R. § 447.253(h).

82. In making changes to New York State's Medicaid reimbursement methodology to implement Part D of Chapter 58 of the Laws of 2009, neither the Legislature nor DOH took into consideration or assessed the effect of the nursing facility Medicaid reimbursement rate cuts on Section 30(A)'s quality of care and access requirements. Rather, the rate cuts were motivated

solely by budgetary considerations, and were implemented without the public notice required by the applicable Medicaid regulations.

B. New York's Medicaid Reimbursement Methodology and Rate Reductions

83. Under New York law, the responsibility for determining and establishing the Medicaid reimbursement methodology and rates based thereon for nursing homes in New York State, such as Plaintiffs, has been vested by law in the Commissioner of Health of the State of New York, pursuant to Article 28 of the Public Health Law and, more particularly, §§ 2807 and 2808 thereof, except in instances where the New York State Legislature itself has chosen to prescribe such methodology by law rather than regulation.

84. Under § 2807(3) of the Public Health Law, the Defendant Commissioner of Health is required to establish Medicaid rates for nursing homes that are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

85. Pursuant to Public Health Law § 2807(3), the Defendant Commissioner of Health must certify the Medicaid rates for nursing homes, to Defendant Director of Budget. Section 2807(3) further provides that, in making such certification, the Commissioner of Health shall certify to the director of Budget that "the proposed rate schedules for payments to hospitals for hospital and health-related services are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

86. The methodology used by the Defendant Commissioner of Health to establish and determine Medicaid rates of reimbursement for nursing homes such as Plaintiffs' is set forth in regulations adopted by the New York State Hospital Review and Planning Council, and approved by the Commissioner of Health. Those regulations are contained in Subpart 86-2 of

Title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York. 10 N.Y.C.R.R. 86-2.1 *et seq.* ("Subpart 86-2").

87. For rates effective on and after January 1, 1986, the State of New York adopted a Medicaid reimbursement methodology in which the operating cost component (as distinguished from the capital cost component) of a nursing home's reimbursement rate was based upon a modified pricing system whereby a facility's rate was based upon costs grouped into "direct" services, *i.e.* nursing and related services, and "indirect" services such as housekeeping and administration, that were subject to a "corridor" defined by a maximum ceiling and minimum floor or base, such that a facility would be reimbursed its actual costs if those costs were within the corridor. If operating costs were above the ceiling, the operating cost component of a facility's rate was reduced to the ceiling; conversely, if costs were below the base, the operating cost component of a facility's rate was raised to the minimum base. Under this methodology, set forth in Subpart 86-2, the operating costs reported by a facility were further adjusted to account for variances in costs among different regions of the State, as well as differences in the case-mix of patients/residents (*i.e.,* their acuity of care levels). Costs were also adjusted by a trend factor to account for inflation between the "base period" (when costs were reported) and the actual rate period when rates were to be paid. The calculation resulted in creation of a *per diem* rate which would then be paid to each facility upon its submission of a bill to the Medicaid program for each day that each Medicaid-eligible patient resided in the facility during the rate period.

88. Under the methodology described above, and for all periods prior to April 1, 2009, a facility's particular case-mix was determined based upon its entire resident population, not just its Medicaid residents.

89. The aforementioned methodology adopted calendar year 1983 as the original "base period," provided, however, that new facilities and facilities that underwent transfers of ownership to non-related parties were entitled to have the operating cost component of their rates calculated based on operating costs incurred during the first 12-month period during which they experienced an overall average occupancy of 90%.

90. Upon information and belief, during the period from 1986 through 2006, the methodology described above, as adjusted from time to time between 1986 and 2006, was used to calculate rates, and this methodology, as adjusted from time to time between 1986 and 2006, was approved and accepted by CMS as part of the State Plan, as required by Federal law.

91. In 2006 the New York State Legislature enacted, and then-Governor Pataki signed into law, Part C of Chapter 109 of the Laws of 2006 (the "2006 Revision") adding, *inter alia*, subdivision 2-b to Public Health Law § 2808. This addition significantly changed New York State's methodology for reimbursing nursing homes under the Medicaid program.

92. Subdivision 2-b of § 2808 of the Public Health Law, as added pursuant to § 47 of the 2006 Revision effective January 1, 2009, provided that the operating cost components of Medicaid reimbursement rates to be paid to nursing homes in New York State were to be calculated based upon 2002 base year costs (except for any facilities whose rates were already being determined on a base year more recent than 2002 because of a change in ownership or because it was a new facility). This provision, colloquially known as the "rebasing provision," was a significant change in New York State's reimbursement methodology which previously had based the operating cost component of a facility's Medicaid reimbursement rate on 1983 reported costs (except for new facilities or those with a qualified change of ownership).

93. The rebasing provision was not applied to all nursing homes. Any facility which, as a result of the new methodology, would receive a Medicaid reimbursement rate that was lower than its current rate would not be subject to rebasing. This provision is colloquially known as the "hold harmless provision."

94. Pursuant to paragraph (g) of subdivision 2-b of Public Health Law § 2808, as added by § 36 of Part C of Chapter 58 of the Laws of 2007, the operating cost component of nursing homes' Medicaid reimbursement rates for periods commencing on and after April 1, 2009 was to be further adjusted by using a case-mix comprised "only of the number of patients properly assessed and reported in each patient classification group and eligible for [Medicaid]," rather than a case-mix of all residents within a facility, as had theretofore been required by the methodology in effect.

95. The changes brought about by § 47 of the 2006 Revision were the culmination of efforts of a joint task force consisting of representatives from the three major provider associations representing nursing homes in the not-for-profit, hospital-based, and proprietary sectors of New York State's long-term care industry.

96. The joint task force presented their findings to representatives of the Legislative and Executive Branches of New York State government, including DOH.

97. Thereafter, a revised Medicaid reimbursement methodology for nursing homes was developed by DOH and was embodied in legislation which ultimately became the 2006 Revision. This legislation addressed problems with the then-existing methodology, including, in particular, the use of a 1983 base year which, by 2006, was more than two decades old and a poor predictor of actual costs incurred by nursing homes more than 20 years later.

98. The bill that became the 2006 Revision was passed by the Legislature and in June 2006 it was signed into law by the Governor.

99. Upon information and belief, the Director of the Budget and/or other State officials estimated that, as a result of the changes adopted by the Legislature and signed into law pursuant to the 2006 Revision, the aggregate State-wide annualized increase in Medicaid reimbursement to all nursing homes in 2009 would be approximately $460 million above the aggregate amount paid in 2006. This increase was due, in large part, to the fact that, effective January 1, 2009, rates were to be based on 2002 rather than 1983 costs, in order to more accurately reflect the costs of providing nursing home services as well as to implement the hold harmless provision.

100. In adopting the 2006 Revision, the Legislature did not place any cap or limit on the aggregate amount of any increase in the Medicaid reimbursement due nursing homes on and after January 1, 2009.

101. The $460 million estimate of the cost of 2009 Medicaid rate increases statewide did not include an anticipated reduction in expenditures attributable to the changeover from a case-mix based on all patients to a case-mix based only on Medicaid patients that would become effective April 1, 2009. Upon information and belief, the Director of the Budget and/or other State officials initially estimated that this changeover would save the State approximately $250 million, leaving unfunded approximately $210 million.

102. Paragraph (a) of subdivision 2-b of Section 2808 of the Public Health Law, as added by § 47 of the 2006 Revision, further provided "transitional" rates for calendar years 2007 and 2008 to bridge the gap between rates paid under the methodology that existed through

December 31, 2006 and the new rebasing methodology that was to take effect on January 1, 2009.

103. Paragraph (a)(ii) of subdivision 2-b of § 2808 of the Public Health Law, as added by § 47 of the 2006 Revision, provided that (a) the aggregate additional amount to be paid statewide to nursing homes in 2007 (as distinguished from 2009) would be limited or "capped" at $137.5 million over and above the aggregate statewide amount paid in 2006, and (b) for 2008 (as distinguished from 2009), the aggregate statewide annual additional amount to be paid was limited to $167.5 million over and above the aggregate expenditures made to reimburse all nursing homes in New York State during calendar year 2006.

104. The foregoing changes in the methods and standards for payment as set forth in the 2006 Revision required Federal State Plan Amendment approval and, upon information and belief, the Defendant Commissioner of Health and/or his predecessors in office duly submitted such changes to CMS in order to obtain such approval.

105. Upon information and belief, in 2008 the State of New York obtained approval from CMS of an amendment to the State Plan with respect to implementation of the changes to the methods and standards of payment for reimbursing nursing homes pursuant to the 2006 Revision, and thereafter Plaintiffs were reimbursed by the Medicaid program for services provided to Medicaid recipients in 2007 and 2008 in accordance with Chapter 109.

106. Under Public Health Law § 2807(7), the Defendant Commissioner of Health is required to notify nursing homes at least 60 days in advance of the effective date of their Medicaid reimbursement rates.

107. On or about December 8, 2008, DOH advised Plaintiffs of their facility-specific Medicaid reimbursement rates for nursing facility services for the period commencing January 1,

2009, indicating that the rate reflected the rebasing provisions implemented by the 2006 Revision and made effective January 1, 2009.

108. Thereafter, Plaintiffs, in reliance upon said rates adopted in accordance with the 2006 Revision and in reliance upon the State Plan Amendment approved by the Federal government in 2008, and in reliance upon the provider agreements they had executed with the State pursuant to 42 U.S.C. § 1396a(a)(27) and 42 C.F.R. 431.107, provided nursing facility services to eligible Medicaid recipients for the period commencing January 1, 2009, and continued to do so through December 31, 2009.

109. On or about April 7, 2009, Governor Paterson signed into law Chapter 58 of the Laws of 2009.

110. Part D of Chapter 58 of the Laws of 2009, enacted the "Long-Term Care Reform Act," *inter alia*, (a) limited or "capped" the additional amount to be paid in Medicaid reimbursement to nursing homes pursuant to the 2006 Revision for the period from April 1, 2009 through March 31, 2010 at $210 million. The statute instructs Defendants Commissioner of Health and Director of the Budget to "make such proportional adjustments to such rates as are necessary to result in an increase of such aggregate expenditures of two hundred ten million dollars ($210,000,000). . ." (*see* Exhibit A); and (b) eliminated the "trend factor" or inflation adjustment that otherwise would have been applied to such rates for the period from April 1, 2009 through March 31, 2010.

111. On April 29, 2009, DOH published in the New York State Register a Public Notice of its intention to amend the State Plan with changes to the Medicaid rate reimbursement methodology for the periods May 1, 2009 through March 31, 2010 and April 1, 2010 through March 31, 2011 (the "Public Notice"). The Public Notice stated that the "estimated annual net

aggregate increase in gross Medicaid expenditures attributable to the changes for state fiscal year 2009/2010 is $210 million." *See* Exhibit B. There is no discussion whatsoever in the Public Notice of the data used to develop the change in the methodology, nor is there any reference to the rate period April 1, 2009 through April 30, 2009.

112. By letter dated January 13, 2010, a sample of which is annexed hereto as Exhibit C, DOH informed each Plaintiff of adjustments to their facility-specific Medicaid reimbursement rates for the periods April 1, 2009 through April 30, 2009 and May 1, 2009 through December 31, 2009, and advised that the new rates are available on the Health Provider Network, an internet-based service established by DOH for communications with New York health care providers. The January 13, 2010 announcement was an unprecedented retroactive promulgation of new rates, after Plaintiffs had provided services to Medicaid beneficiaries under the earlier promulgated rates for up to 9 months in 2009. These new rates were provided to the Facilities as "notice" rates, with a statement that the rates would not be processed for payment "until all approvals have been received from both CMS and [Division of Budget] . . ." Upon information and belief, each nursing facility participating in the Medicaid program received the January 13, 2010 letter.

113. Although the rates set forth in the January 13, 2010 letter are subject to approval by CMS and the Division of Budget, DOH nevertheless advised Plaintiffs that they would have to submit any appeals which they may have from the "notice" rates within 120 days from January 13, 2010.

114. The January 13, 2010 letter states that the rates calculated by DOH reflect, *inter alia,* (a) "Medicaid only case mix adjustments in accordance with the Chapter 58 of the Laws of 2007, effective April 1, 2009"; and (b) an across-the-board "scale back adjustment."

115. Upon information and belief, it was determined by the Director of the Budget and/or other State officials that the estimate of the cost to the State of 2009 Medicaid rate increases statewide as a result of the "rebasing provision" was approximately $850 million, not $460 million as earlier estimated by Defendants, and the savings to the State from the changeover to a Medicaid-only case mix was approximately $475 million, not $250 million as estimated. Accordingly, Defendants determined that the unfunded amount was $375 million, not $210 million, and Defendants therefore determined to adjust Medicaid reimbursement rates downward by $165 million so that the increased State spending was limited to the $210 million, as referenced by the Laws of 2009.

116. With regard to the "scale back" referenced in DOH's January 13, 2010 letter, DOH, in effect, made adjustments to the reimbursement due each nursing home – without regard to quality of care or access – by dividing the total amount it had allocated for Medicaid reimbursement and allocating the total in proportion to each nursing home's share of Medicaid revenue as of April 1, 2009. Thus, the January 13, 2010 letter states:

> Chapter 58 of the Laws of 2009 requires rates for the April 1, 2009 through March 31, 2010 period include proportional adjustments which reflect the rebasing provisions of Chapter 109 of the Laws of 2006 and Medicaid only case mix implemented by Chapter 58 of the Laws of 2007 that result in an increase of total statewide Medicaid rates (excluding capital rates) that are no more or no less than $210 million. The proposed [State Plan] amendment now before CMS implementing that $210 million provision has, in accordance with Federal Public Notice requirements, a May 1, 2009 effective date. Thus, the Department calculated Medicaid rates effective April 1, 2009 through April 30, 2009 that do not reflect this adjustment, and Medicaid rates effective May 1, 2009 through December 31, 2009 that adjust such rates that the aggregate adjustment in rates in effect for April 1, 2009 through March 31, 2010 result in aggregate Medicaid expenditures that are no more or no less than $210 million. The proportional adjustments to such rates were determined using each facility's proportionate share of their estimated Medicaid revenue from the

April 1, 2009 rates that reflect the impact the rebasing and Medicaid only case mix. The rate adjustment to adjust spending to the required $210 million amount is reflected as the "scale back adjustment" on the May 1, 2009 rate sheet.

117. Prior to issuance of the January 13, 2010 letter advising the Facilities of their revised Medicaid reimbursement rates, neither the Defendants nor any other responsible State officials or employees:

a. published in the State Register or any newspaper of widest circulation in any city within the State having a population in excess of 50,000 the revised Medicaid reimbursement rates for nursing homes that resulted from the changes made pursuant to Chapter 58 of the Laws of 2009, the methodologies underlying the establishment of such rates, their justifications, the expected decreases in expenditures resulting therefrom, or their effective dates; or

b. afforded Plaintiffs a reasonable opportunity to comment on such rates, methodologies and justifications.

118. Upon information and belief, prior to issuance of the January 13, 2010 letter, neither the Defendants nor any other responsible New York State official or employee provided assurances to the appropriate Federal officials pursuant to 42 C.F.R. § 447.253(b)(1)(iii)(C) and (h) that the data and methodology used in establishing the amended Medicaid rate reimbursement was made available to the public and that the public notice requirements of 42 C.F.R. § 447.205 have been satisfied.

119. The noticed adjustments to Plaintiffs' Medicaid reimbursement rates as a result of implementation of the changes made pursuant to the Laws of 2009 represent substantial decreases in the Facilities' Medicaid reimbursement rates caused by significant changes in New York's methods and standards for setting rates that do not meet Federal requirements for, and

were not properly described in, notices that Defendants were required to publish before they could become effective.

120. The noticed adjustments to Plaintiff's Medicaid reimbursement rates as a result of implementation of the changes made pursuant to the Laws of 2009 do not take into account, among other things, that those Plaintiffs with special units for ventilator-dependent individuals, such as Plaintiff Silver Lake and Plaintiff Promenade, must arrange for significantly higher staffing levels than for units which are non-ventilator-dependent. Nonetheless, despite recognition in prior rates of the additional care required to be provided to ventilator dependant patients in DOH-certified units, under the January 13 notice rates reimbursement to many facilities, including Silver Lake and Promenade, for care to patients in these units was reduced. There is no evidence that Defendants made any findings that justified reduced reimbursement rates for services provided in ventilator-dependent units.

121. The noticed adjustments to Plaintiffs' Medicaid reimbursement rates as a result of implementation of changes made pursuant to the Laws of 2009 do not take into account the mandate of §36 of Part C of the Laws of 2007 to use a case mix of Medicaid-eligible individuals in computing the operating cost component of nursing homes' Medicaid reimbursement rates for periods beginning April 1, 2009. Rather than computing this component of the rate based on individuals who are eligible for both Medicare (the Federal program that covers, *inter alia,* nursing facility services for qualified beneficiaries) and Medicaid, Defendants included in the computation only those individuals whose care is actually being paid for by Medicaid but ignoring those who are Medicaid eligible but have their care temporarily paid for by Medicare.

122. The noticed adjustments to Plaintiffs' Medicaid reimbursement rates as a result of implementation of changes made pursuant to the Laws of 2009 undercut the purpose of input

from the joint task force, *i.e.*, to ensure that nursing homes received adequate compensation for the services they provide to Medicaid recipients.

C. Failure To Comply With Federal And State Laws

123. There is no evidence that Defendants considered or otherwise took into account either the "quality of care" or the "access" provisions of Section 30(A) prior to notifying the Facilities of the pending reduction of their Medicaid reimbursement payments pursuant to the Laws of 2009.

124. Plaintiffs also have found no evidence that New York took any steps to determine how the reimbursement reduction would affect compliance with the "quality of care" or "access" provisions of Section 30(A).

125. Defendants cannot show that the new, reduced Medicaid reimbursement rates, in particular the "scale back," properly reflect the costs of providing quality nursing facility services to Medicaid-eligible individuals in the State of New York as required by Section 30(A).

126. There is no evidence that the new, reduced reimbursement payments are "designed to enlist participation" of sufficient providers of Medicaid as required by Section 30(A).

127. Defendants violated New York State law, specifically Public Health Law § 2808(2-b)(g), as added by Part 36 of the Laws of 2007, by failing to include all Medicaid-eligible individuals (*i.e.*, those who are dually eligible for both Medicare and Medicaid) in the case mix component of the Medicaid reimbursement rate methodology.

128. There is no evidence that DOH provided public notice and the opportunity for public comment prior to the January 13, 2010 letter advising the Facilities of the change in methodology in arriving at Medicaid rate reductions, as it was required to do by Section 13(A),

42 C.F.R. § 447.253 and 42 C.F.R. § 447.205. The notice published in the New York State Register on April 29, 2009 does not suffice to satisfy these requirements.

D. Harm To Nursing Homes And Their Residents

129. Unless enjoined, the effect of the proposed reimbursement reduction will be catastrophic for Medicaid recipients across New York, as well as health service providers like the Facilities. The rate cut will result in the reimbursement for nursing facility services being cut so drastically that facilities including the Plaintiffs may be forced to curtail services; lay off employees, risking compromise to the quality of care; where possible, discourage Medicaid admissions in favor of Medicare or private insurance paid patients whose rates are not subject to these drastic reimbursement cuts; file for Chapter 11 bankruptcy protection, clearly posing a danger to the orderly care of patients; or, in some cases, cause the Facilities to cease operations altogether.

130. Unlike most private businesses, nursing homes are regulated and, in response to drastic reductions in Medicaid reimbursement, cannot simply reduce costs proportionately. There are limitations on the cost controls that facilities can put in place, certain staff are mandated by regulation, and of course when dealing with human lives and frail elderly residents, some economies are simply impossible.

131. The licensed operator of Plaintiff Park Gardens and its accountants have stated that the proposed Medicaid reimbursement rates fall far short of covering the costs of providing nursing home services to Medicaid-eligible individuals at Park Gardens. The operator has stated that he cannot afford services sufficient to provide the level of care required by Federal regulations to Medicaid patients where the reimbursement paid is below the actual cost of providing such care. Therefore, if the Medicaid rates proposed in the January 13, 2010 letter to

New York nursing homes go into effect, Park Gardens may be forced to lay off employees and make cuts to services provided to Park Gardens' residents, with possible compromise to the quality of care to the residents. The operator and its accountants have estimated that the impact of the proposed change to the reimbursement methodology with respect to use of Medicaid-only patients to calculate the case-mix component of the reimbursement rate and the scale back in reimbursement rate for the seven-month period May 1, 2009 to December 31, 2009, will be $8.61 per patient day. Having an average of 64,404 Medicaid patient days, the impact to Park Gardens for this seven-month period is estimated at $554,518.

132. The licensed operator of Plaintiff Woodhaven and its accountants have stated that the proposed Medicaid reimbursement rates fall far short of covering the costs of providing nursing home services to Medicaid-eligible individuals at Woodhaven. The operator has stated that he cannot afford services sufficient to provide the level of care required by Federal regulations to Medicaid patients where the reimbursement paid is below the actual cost of providing such care. Therefore, if the Medicaid rates proposed in the January 13, 2010 letter to New York nursing homes go into effect, Woodhaven may be forced to lay off employees and make cuts to services provided to Woodhaven's residents, with possible compromise to the quality of care to the residents. The operator and its accountants have estimated that the cost of the proposed change to the reimbursement methodology with respect to use of Medicaid-only patients to calculate the case mix component of the reimbursement rate and the scale back in reimbursement rate, for the period May 1, 2009 to December 31, 2009 will be $15.42 per patient day. Having an average of 32,569 Medicaid patient days, the impact to Woodhaven for this seven-month period is estimated at $502,214.

133. If the laws that Plaintiffs seek to enjoin in this action are allowed to go into effect, frail, elderly Medicaid-eligible individuals may lose access to the quality 24-hour skilled nursing care they require in order to "attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident," as required by 42 U.S.C. § 1395i-(b)(2). *See also* 42 C.F.R. § 483.25.

134. Nursing homes and trade associations representing them have made every effort, including participation in meetings with DOH staff, to alert DOH and the Governor's office, to explain the detrimental effects of the planned reimbursement reduction pursuant to the Laws of 2009 on actual patient access and quality of care. The Plaintiffs regard this lawsuit as a last resort that they sought to avoid. The Defendants have left the Facilities with no choice but to seek injunctive relief.

135. In short, there is real and immediate risk of harm to the Facilities and Medicaid recipients due to the Medicaid reimbursement reduction implemented pursuant to the Laws of 2009.

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief Based on Violation of 42 U.S.C. § 1396a(1)(30)(A) and the Supremacy Clause)

136. Plaintiffs repeat and reallege Paragraphs 1 through 135 as if set forth fully herein.

137. Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, the Constitution "and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

138. By choosing to participate in Medicaid, the State of New York obligated itself to comply with certain Federal statutes and regulations, including Sections 30(A).

139. Pursuant to Section 30(A), Defendants had a duty to consider efficiency, economy, quality of care, and equality of access when establishing reimbursement rates. Specifically, Section 30(A) required New York to "provide such methods and procedures relating to . . . payment for, care and services available under the plan . . . as may be necessary . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available . . . at least to the extent that such care and services are available to the general population in the geographic area."

140. Defendants violated Section 30(A) by implementing a Medicaid reimbursement rate reduction without giving sufficient weight to – or even considering – the impact of the rate reduction on quality of care or access for Medicaid beneficiaries.

141. There is no evidence that Defendants intend to comply with the requirements of Section 30(A) prior to implementing the reimbursement rate reductions disclosed in DOH's January 13, 2010 letter to the Facilities.

142. Defendants' new Medicaid reimbursement rates do not satisfy the requirements of Section 30(A) because reimbursement will not be sufficient to assure "quality of care" and "access to services."

143. In establishing the new Medicaid reimbursement rates, Defendants took nothing into account other than budgetary considerations.

144. Defendants' reimbursement methodology violates the Supremacy Clause and is therefore preempted by Federal law. By virtue of the foregoing, enforcement of Part D of Chapter 58 of the Laws of 2009 and the purported rates established by the January 13, 2010 notice should be enjoined.

145. There is no administrative remedy available to challenge the statutory and regulatory promulgation complained of herein.

146. Plaintiffs have no adequate remedy at law.

**<u>SECOND CLAIM FOR RELIEF</u>**

**(Injunctive Relief Based on Violation of 42 U.S.C. § 1396a(a)(13)(A) and the Supremacy Clause)**

147. Plaintiffs repeat and reallege Paragraphs 1 through 146 as if set forth fully herein.

148. Pursuant to Section 13(A), in establishing reimbursement rates for nursing homes, New York was required to provide a public process under which (a) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published; (b) providers, beneficiaries and their representatives and other concerned state residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies and justifications; and (c) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates, are published.

149. Defendants' new Medicaid reimbursement rates were established without complying with the public process required by Section 13(A). As such, they violate the Supremacy Clause and are therefore preempted by Federal law.

150. By virtue of the foregoing, enforcement of Part D of Chapter 58 of the Laws of 2009 and the purported rates established by the January 13, 2010 notice should be enjoined.

151. There is no administrative remedy available to challenge the statutory and regulatory promulgations complained of herein.

152. Plaintiffs have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Injunctive Relief Based on Violation of New York State Law)

153. Plaintiffs repeat and reallege Paragraphs 1 through 152 as if set forth fully herein.

154. Defendants also violated New York State Public Health Law § 2808(2-b)(g), as added by Part 36 of the Laws of 2007, by failing to include all Medicaid-eligible individuals (*i.e.*, including those who are dually eligible for both Medicare and Medicaid as well as those whose care is paid for by Medicaid) in the computation of the case mix component of the Medicaid reimbursement rate methodology. Accordingly, implementation of the methodology should be enjoined.

155. There is no administrative remedy available to challenge the statutory and regulatory promulgations complained of herein.

156. Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### (Injunctive Relief and Declaratory Judgment that Medicaid Reimbursement Rate Reductions for Patients in Ventilator-Dependant State-certified Units Violates Federal and State Law)

157. Plaintiffs repeat and reallege Paragraphs 1 through 156 as if fully set forth herein.

158. In promulgating the January 13, 2010 notice rates, defendants did not give consideration to the costs involved in providing care to patients in State-certified units for ventilator dependent patients.

159. No findings of sufficiency of the rates were made, in violation of the provisions of Section 13(A).

160. The failure to promulgate adequate rates for reimbursement for care of ventilator-dependent patients in State-certified units will result in facilities being unable to provide quality

of care to such ventilator-dependent patients, and will have the effect of discouraging facilities from admitting such patients to their facilities, both in violation of Section 30(A).

161. The failure to include the increased costs of providing care to ventilator-dependent patients in State-certified units violates the requirement in New York Public Health Law § 2807(3) that rates by "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

162. There is no administrative remedy available to challenge the regulatory promulgation complained of herein.

163. Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Judgment that the Medicaid Reimbursement Rate Reduction Pursuant to the Laws of 2009 Violates Federal and State Law)**

164. Plaintiffs repeat and reallege Paragraphs 1 through 163 as if fully set forth herein.

165. By reason of the foregoing, an actual controversy exists between the parties concerning whether the reimbursement reduction set forth in DOH's January 13, 2010 letter to the Facilities violates Sections 30(A) and 13(A) of the Social Security Act. Accordingly, to clarify the legal relations of the parties, this Court should issue declaratory relief pursuant to 28 U.S.C. § 2201.

WHEREFORE, Plaintiffs demand judgment as follows:

1) On the First, Second, Third and Fourth Claims for Relief, preliminarily and permanently enjoining Defendants, their agents, servants, employees, successors, assigns, and all those acting in concert with them from (a) implementing the Medicaid rate reductions applicable to Plaintiffs embodied in Part D of Chapter 58 of the Laws of 2009 and (b) paying reimbursement rates lower than those in effect on April 1, 2009;

2) On the Fourth Claim for Relief, declaring that the Medicaid rate reductions applicable to those Plaintiffs providing care to ventilator-dependent patients in State-certified units are unconstitutional, void, and unenforceable;

3) On the Fifth Claim for Relief, declaring that the Medicaid rate reductions applicable to Plaintiffs embodied in Part D of Chapter 58 of the Laws of 2009 are unconstitutional, void, and unenforceable; and

4) Granting such other and further relief to Plaintiffs as to the Court may seem just and proper, including an award of costs and attorneys' fees.

Dated: New York, New York
August 17, 2010

DUANE MORRIS LLP

By: ____________________
Jerome T. Levy
1540 Broadway
New York, New York 10036
Tel. (212) 692-1000
Fax: (212) 692-1020
Attorneys for Plaintiffs

Of Counsel:
Susan V. Kayser, Esq.
Fran M. Jacobs, Esq.